**William LEWIS, Howard Knieriem, and Steve Holley, Appellants,**

v.

**DALLAS SOUNDSTAGE, INC., Hillwood Property Company, and Las Colinas Studios, Ltd., Appellees.**

No. 05–04–00920–CV.

Court of Appeals of Texas, Dallas.

June 22, 2005.

---

Elise Mitchell, Laurance L. Priddy, Dallas, for Appellant.

Baxter W. Banowsky, Banowsky Betz & Levine, P.C., Douglas C. Kittelson, Dallas, for Appellee.

Before Justices MORRIS, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

In this case brought under Title III of the Americans with Disabilities Act of 1990(ADA), William Lewis, Howard Knieriem, and Steve Holley (collectively, appellants) appeal the trial court's take-nothing judgment entered in favor of Dallas Soundstage, Inc., Hillwood Property Company, and Las Colinas Studios, Ltd. (collectively, appellees).[1] Appellants bring six issues on appeal arguing: (1) appellees failed to meet their burden to show the requested move of tour exhibit items would fundamentally alter the nature of appellees' services; (2) there is insufficient evidence to support the trial court's finding that (A) moving the studio tour items to the first floor was not readily achievable, (B) the studio facilities have been operating at a financial loss, (C) appellees' studio facilities have public restrooms on the ground floor that comply with the ADA, and (D) appellees' policy is to welcome all persons to attend the tour of the studio and the studio offers reduced fares and a video recording of the upper floor of the tour area at no extra charge; and (3) the trial court erred in not granting appellants attorney's fees as prevailing parties. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arose as a complaint regarding accessibility of a tour offered by Dallas Soundstage to the public. A portion of the tour is located on the second floor of a two-story building, and the only access to the second floor is a staircase. Las Colinas Studios owns the building, and Dallas Soundstage leases the space used for the tour.

In 1994, in response to an advertisement he had seen, Lewis called appellees and inquired whether someone in a wheelchair could go on the tour. After being told portions of the tour were upstairs and not accessible other than by the stairs, Lewis chose not to go. Knieriem also contacted appellees via the telephone, and he understood he would be unable to see the part of the tour on the second floor. He too chose not to go. Holley went to Dallas Soundstage with his family, and they all inquired about the tour. Holley accompanied his family on the tour of the first floor, but when they went upstairs, Holley waited in the lobby.

After deciding not to attend the tour, Lewis filed suit. Knieriem and Holley joined as plaintiffs in 1995. The second amended petition alleged that appellees violated the ADA by: (1) discouraging persons with disabilities from attending the tour and informing them verbally the tour was not accessible; (2) failing to provide fully accessible public restrooms; (3) offering a tour with a path of travel that was not accessible to persons with mobility impairments; and (4) failing to provide handicapped parking with signage as required by the ADA. At trial, Lewis, Knieriem, and Holley summarized what they wanted: appellees either to install a lift providing access to the second floor or to move the tour exhibit items from the second floor to the first floor.

In May 1995, appellees filed a motion for summary judgment then filed another motion for partial summary judgment in Oc-

1. Appellants originally sued Dallas Soundstage, Inc., Las Colinas Studios, Ltd., and Hillwood Property Company. At the trial, after both sides closed, Hillwood moved for a directed verdict asking that Hillwood be dismissed from the case because it was no longer an owner in interest in Las Colinas Studios. The trial court granted the motion and dismissed Hillwood from the case. Appellants do not complain of the dismissal on appeal.

tober 1995. The trial court granted the partial summary judgment in November 1995 and declared that the installation of an elevator was not required under the ADA.

The case was then heard before the bench in 1997, and after the parties closed, the trial court granted Hillwood's motion to dismiss it from the suit. Further, the trial court granted the remaining defendants' motion for directed verdict regarding attorney's fees; no evidence had been presented on the issue. The trial court called a recess and suggested the parties return at a later time for closing arguments. The trial court issued its final take-nothing judgment in April 2004 [2] and filed its findings of fact and conclusions of law in support of its judgment in July 2004.

## ATTORNEY'S FEES

■ In their sixth issue, appellants complain the trial court erred in granting a take-nothing judgment because they were prevailing parties and therefore entitled to attorney's fees. Appellants, however, do not present any argument complaining of the granted directed verdict that addressed attorney's fees.

■ Rule 270 permits, but does not require, a trial court to reopen a case to allow additional evidence to be introduced. See TEX.R. CIV. P. 270. At the end of the trial in 1997, the trial court granted appellees' motion for directed verdict on the issue of attorney's fees; no evidence had been presented by appellants regarding the issue of attorney's fees. Although appellants later filed an affidavit regarding attorneys fees, that affidavit was never admitted before the trial court.

On appeal, appellants do not contend the trial court abused its discretion in granting the motion for directed verdict. Appellants also do not raise complaints regarding their late attempt to introduce the missing evidence. Instead, appellants argue they were due attorney's fees because they were prevailing parties.

The trial court never reached that issue; there was no evidence before the trial court regarding attorney's fees. Appellants' argument on appeal does not comport with the reason for the directed verdict; accordingly, they have waived this issue. Cf., McKee v. McNeir, 151 S.W.3d 268, 270 (Tex.App.-Amarillo 2004, no pet.) (grounds asserted on appeal must comport with those mentioned at trial to preserve complaint). We resolve appellant's sixth issue against them.

## SUFFICIENCY OF THE EVIDENCE

In their first through fifth issues, appellants contend appellees either failed to meet the burden of proof or provided no or insufficient evidence to support specific trial court findings and conclusions. In their first issue, appellants specifically argue that appellees failed to meet their burden to show the move of the tour items to the first floor would fundamentally alter the nature of appellees' services. Although not specifically phrased as such, this complaint is an argument that appellees offered no or insufficient evidence that the

---

2. In December 1997, appellees moved for entry of judgment. According to the record, nothing else took place regarding the case until April 2001 at which time appellees moved for appointment of a special master. The trial court appears not to have acted on that motion but notified parties in September 2002 the case was set for final disposition in November of that year. Appellants filed a motion for judgment in October then a motion for new trial in March 2003. At that time, a new judge was on the bench, and the trial court first granted the motion for new trial then, upon a joint motion for judicial review of the trial transcript and request for judgment, the trial court removed the new trial from its docket. Final judgment was issued April 2004.

requested move would fundamentally alter the nature of appellees' services. In issues two through five, appellants argue there was no or insufficient evidence to support specific trial court findings and conclusions that: (1) moving the studio tour items to the first floor was not readily achievable; (2) the studio facilities have been operating at a financial loss; (3) appellees' studio facilities have public restrooms on the ground floor that comply with the ADA; and (4) the appellees' policy is to welcome all persons to attend the tour of the studio and the studio offers reduced fares and a video recording of the upper floor of the tour area at no extra charge.

### Standards of Review

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994); *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997), *pet. denied,* 977 S.W.2d 562 (Tex. 1998) (per curiam). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Min v. Avila,* 991 S.W.2d 495, 500 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam). In doing so we do not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684–85 (Tex.App.-Dallas 1993, no writ). Rather, when addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Catalina,* 881 S.W.2d at 297. We uphold the finding if more than a scintilla of evidence exists to support it. *Id.* In reviewing a factual sufficiency challenge, we ex-amine all of the evidence and set aside a finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt,* 786 S.W.2d 797, 799 (Tex.App.-Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

We do not review a trial court's conclusions of law for factual sufficiency. *See Ashcraft,* 952 S.W.2d at 910. Rather, we evaluate them independently, determining whether the trial court correctly drew the legal conclusions from the facts. *Id.; Dallas Morning News Co. v. Bd. of Trustees of Dallas Indep. Sch. Dist.,* 861 S.W.2d 532, 536 (Tex.App.-Dallas 1993, writ denied). However, incorrect conclusions of law will not require a reversal if the controlling findings of fact will support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.,* 835 S.W.2d 190, 196 (Tex.App.-Austin 1992, no writ). When findings of fact are included among the trial court's conclusions of law, we will review them as findings of fact. *Sears Roebuck & Co. v. Dallas Cent. Appraisal Dist.,* 53 S.W.3d 382, 385–86 (Tex.App.-Dallas 2000, pet. denied).

### Burdens of Proof

Title III of the ADA prohibits discrimination against a person in a place of public accommodation. 42 U.S.C.A. § 12182(a) (West 1995). One way in which a plaintiff may argue that a defendant has discriminated against an individual with a disability is to argue the defendant has failed "to make reasonable accommodations in policies, practices, or procedures when such modifications are necessary to afford such ... accommodations to individuals with disabilities." 42 U.S.C.A. § 12182(b)(2)(A)(i). In making such an ar-

gument, the plaintiff has the burden to prove that the policy modification was requested and is reasonable. *See Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059 (5th Cir.1997). The plaintiff may meet this burden by "introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases." *Id.* Once that burden is met, the defendant may rebut by pleading and meeting its burden of proving the requested modification would "fundamentally alter the nature of the public accommodation." *Id., see also Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir.2004). This is done by looking at that defendant's particular circumstances. *Johnson*, 116 F.3d at 1059–60.

In addition to a policy modification argument, a plaintiff may argue a defendant has violated the ADA by discriminating against a person with disabilities by failing to "remove architectural barriers ... that are structural in nature, in existing facilities, ... where such removal is readily achievable." 42 U.S.C.A § 12182(b)(2)(A)(iv). Readily achievable—that which is "easily accomplishable and able to be carried out without much difficulty or expense"—is determined by looking at factors such as the nature and cost of the action required for the removal of the barrier; the overall financial resources of the facility; the overall size of the business; the number of persons employed at the site; the effect on expenses and resources; safety requirements that are necessary for safe operation; and the impact otherwise of the action upon the operation of the site. 42 U.S.C.A. § 12181(9) (West 1995). Although the ADA does not specify who bears the burden of proving whether removing a barrier is readily achievable, the Tenth Circuit, having reviewed cases under other subsections of section 12182(b)(2)(A), concluded the initial burden is on the plaintiff. *See Colo. Cross Dis-*

*ability Coalition v. Hermanson Family Ltd.*, 264 F.3d 999, 1003 (10th Cir.2001). We are persuaded by the Tenth Circuit's analysis.

■ In an architectural barrier claim, the plaintiff has the initial burden of showing that the suggested barrier removal is readily achievable under the particular circumstances. *See id.* Only if the plaintiff satisfies this initial burden must the defendant then rebut the plaintiff's showing. *Id.* at 1005–06. This places the ultimate burden of the defense on the defendant, but no defense need be proven if the plaintiff never introduces evidence in the first place that establishes the proposed barrier removal is readily achievable. *See id.* at 1007.

■ The evidence a plaintiff uses to meet this initial burden must be specific and relative to the particular circumstances involved. *See id.* at 1009. Having established who bears the burden in *Colorado Cross Disability Coalition*, the Tenth Circuit concluded the plaintiff introduced evidence only of a speculative nature; the plaintiff offered no evidence of specific design, cost, or estimates. The expert testified regarding conceptual ideas. Because of that, the Tenth Circuit concluded the plaintiff had not met its initial burden of showing the barrier removal was readily achievable.

### Policy Modification / Fundamental Alteration

■ In their first issue, appellants argue appellees failed to meet their burden of rebutting appellants' policy modification argument. Appellants also argue the trial court failed to enter a finding under this argument.

Originally, appellants argued their case asserting a request for appellees to remove the complained-of barriers to accessibility.

However, during the trial, appellants added to their argument and contended that appellants had a policy in place that, if modified, would provide access to the second floor tour exhibit items. Appellants made this argument by asserting that appellees' *choosing* to place some of the tour exhibits on the second floor was a type of policy.[3] Appellants contended that to meet the requirements of the ADA, appellees needed a policy to have all tour exhibit items on the first floor. Assuming, but not deciding, that the decision to place tour exhibit items on the second floor was some sort of "policy," and assuming that appellants met their initial burden that the requested policy modification was reasonable, we conclude that appellees met their defensive burden under the ADA.

Appellants called Steve Neusse as a witness. Neusse is the general manager of both Las Colinas Studios and Dallas Soundstage. However, the two are separate companies; Neusse is paid by both companies separately. Neusse testified that the policy of Dallas Soundstage is that "the tour is open to everyone regardless of disability, and [Dallas Soundstage has] done everything [it] can to try to make it as accessible as possible."

Neusse also discussed the possibility of moving all tour items downstairs, and he said that the express terms of the lease meant that Dallas Soundstage did not have the right to move items belonging to it to the first floor. First, Dallas Soundstage leased space only on the second floor. According to Neusse, Dallas Soundstage, which operates the tour, leased space in the building from Las Colinas Studios. Dallas Soundstage, as the tenant, had sole and exclusive use of specific areas of the building—specifically, space that was represented by Exhibit A as attached to the lease. Exhibit A shows areas on the second floor only. Accordingly, the evidence showed that Dallas Soundstage did not lease any space for its sole use on the first floor. Second, Neusse testified that the lease prohibited Dallas Soundstage from interfering with the use of any of Las Colinas Studios's working studios and from interfering with other tenants or licensees or with any production activities. Accordingly, Dallas Soundstage did not have authorization under the lease to move its tour exhibits to the first floor.

Further, Neusse discussed how the space was used on the first floor. Three large stages were on the first floor, as well as dressing rooms, a wardrobe room, a rehearsal hall, and a makeup room. Neusse stated those rooms were all functional in nature and were parts of the actual studios operated by Las Colinas Studios. The inherent function of Las Colinas Studios was to operate as actual movie and television studios and soundstages. Las Colinas Studios leased its stages and corresponding dressing rooms to production companies such as the Lions Group— the company that produces the television show *Barney*. Neusse stated that to move the tour display to the first floor, requiring the relocation of areas necessary for the operation of the actual studios, would "destroy the function of the ground floor." Neusse added that to move the support services of the stages to the second floor would adversely affect the business of leasing the studios.

Further, regarding Dallas Soundstage, part of the tour included the opportunity to walk through a movie studio, including the dressing rooms and wardrobe and make-up rooms. Neusse stated that to move the second floor tour items to that

---

**3.** Appellants made this argument only as it applied to moving tour items downstairs. Accordingly, we analyze this issue only as it applies to any sort of policy regarding the decision to place tour exhibit items on the first or second floor.

area of the first floor would thus destroy the function of the studio as an actual complete working studio, thereby altering the nature of the tour—the public accommodation at issue—itself. Neusse also stated that the tour itself was only ancillary to the use of the building as a production and television facility.

■ Appellants argue in their reply brief that fundamental alteration is an affirmative defense and because appellees did not plead it as such, appellees waived the defense. However, appellants did not raise the issue of policy modification until during the trial. Appellees responded during trial and questioned Neusse on how moving the tour exhibits to the first floor would change the primary use of the building and adversely affect the business. Appellants did not object at that time to appellees' presentation of the defense. Accordingly, we conclude the issue was tried by consent. See TEX.R. CIV. P. 67; *Johnson v. Structured Asset Servs., LLC,* 148 S.W.3d 711, 719 (Tex.App.-Dallas 2004, no pet.).

We have viewed the evidence in the light favorable to the judgment. Based on Neusse's testimony and the evidence before the trial court, we conclude the evidence was sufficient to show that moving the tour exhibit items to the first floor would fundamentally alter the nature of the public accommodation at issue.

■ Appellants complain the trial court did not enter findings of fact or conclusions of law regarding their policy modification issue. Appellants, however, also never included their policy modification argument in their pleadings; on the other hand, appellants specifically raised the argument of barrier removal and "readily achievable." Regardless, the trial court's take-nothing judgment indicates the trial court found in favor of appellees on this issue, and the findings of fact support the conclusion. The trial court specif-ically found that the ground floor was a working studio and that destroying that would destroy the primary concept of providing the viewing of an actual functioning television and movie studio. Further, appellants' complaint that this specific conclusion was not included in the original findings and conclusions is waived because appellants did not request additional findings of fact or conclusions of law after receiving the ones about which they complain. See TEX.R. CIV. P. 298; *Dallas Morning News,* 861 S.W.2d at 536.

We resolve appellants' first issue against them.

### Moving Tour Exhibit Items to First Floor

■ In their second issue, appellants argue there was no or insufficient evidence to support the trial court's specific findings and conclusions regarding barrier removal. The court concluded that moving the tour items to the first floor was not "readily achievable." The trial court outlined three findings supporting its conclusion:

(1) The ground level of the facility will not physically accommodate the portions of the Tour that are currently on the upper level because there is not enough space;

(2) The entire ground level is dedicated and leased to producers of commercials and entertainment; and

(3) The ground level is the working studio which is the primary focus of the Tour.

The trial court stated also that moving the tour exhibits was not easily accomplishable or able to be carried out without much difficulty or expense. Appellants argue alternatively that such findings did not support a judgment in appellees' favor.

We note first that appellants offer no argument and cite no authority that the

trial court's conclusion that moving tour items to the first floor was not readily achievable did not support a judgment in appellees' favor. Accordingly, they have inadequately briefed the second part of their argument under their second issue. *See* Tex.R.App. P. 38.1(h).

We next turn to the remainder of appellants' argument under their second issue. Appellants argue that the evidence showed "it would have cost Defendants practically nothing to make changes to the location of their exhibits...."[4] However, the only evidence appellants highlight is that showing other modifications were made using appellees' own employees. Appellants offered no evidence of how much it would cost to move the tour exhibits to the first floor, such as the cost to reconfigure the space, to move walls (as was testified by Neusse would be required to do in order to move items downstairs), or to make leasehold improvements to the upstairs to accommodate the needs of the displaced tenants. Appellants also offered no evidence of specifically how they proposed the downstairs space would be used and reconfigured.

Appellants' specific complaint on appeal is that the evidence did not support the trial court's conclusion that moving tour exhibit items to the first floor was not readily achievable. However, having reviewed the evidence, we conclude that appellants never met their initial burden of showing the requested barrier removal was readily achievable. *See Colo. Cross Disability Coalition,* 264 F.3d at 1007. Evidence of how other accessibility improvements were accomplished does not address the particular circumstances of moving walls, reconfiguring space, and making leasehold improvements. Because appellants never met this initial burden, appellees were not required to produce specific evidence to rebut appellants' contention. We resolve appellants' second issue against them.

### Financial Status of Las Colinas Studios

■ In their third issue, also applicable to the barrier removal claim, appellants argue there is no or insufficient evidence to support the trial court's specific finding that the "Tour has been continuously operating at a financial loss." Appellants also argue that such finding is irrelevant.

■ Under this issue, appellants' argument addresses one area of the factors used to show whether a barrier removal request is readily achievable: overall financial resources of the facility, including the overall size of the business, the number of persons employed at the site, and the effect on expenses and resources. *See* 42 U.S.C.A. § 12181(9). While financial status may not directly relate to a policy modification claim, it is a factor under a barrier removal argument. Accordingly, the finding is not irrelevant.

Looking at the evidence, Neuss testified that Dallas Soundstage and Las Colinas Studios had lost money. Appellants, though, point out that Neuss agreed his testimony was based on financial statements that had not been verified. There was no evidence, however, that either Dallas Soundstage or Las Colinas Studios were not operating at a financial loss. Ap-

---

4. In their reply brief, appellants also argue that their expert, Jim Sealy, testified that removal of seven specific complained-of barriers was readily achievable. Appellants list these seven such "barriers" in their brief; however, none of these barriers pertain to moving the tour exhibits to the first floor. And in this issue, appellants have appealed the trial court's findings and conclusion only regarding moving the exhibit tour items to the first floor. Accordingly, this argument is inapplicable to whether the evidence supports the trial court's findings and conclusion as complained about by appellants.

pellants also presented no other evidence addressing appellees' financial resources.

We have reviewed all of the evidence. We conclude the evidence is not so weak or this finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Zieben,* 786 S.W.2d at 799. We resolve appellants' third issue against them.

### Public Restrooms in Compliance with the ADA

■ In their fourth issue, appellants argue there is no or insufficient evidence to support the trial court's finding and conclusion that the studio had public restrooms on the ground floor that comply with the ADA. Appellants raised this argument in their second amended petition as part of their contention that appellees violated section 12182(a) of the ADA by failing to provide public accommodations that were accessible. They further argued in their petition that appellees could make all of the complained-of accommodations and that they were "readily achievable." Appellants never addressed this issue using a policy modification argument. Accordingly, we review appellants' issue under the burden applicable to a barrier removal claim.

Having made their argument under section 12182(a) of the ADA, appellants contended that the restrooms were inaccessible. However, even assuming the restrooms were not accessible as required by the ADA, to make their argument, appellants had the initial burden of proving that any barrier removal requested was readily achievable. *See Colo. Cross Disability Coalition,* 264 F.3d at 1009. Appellants did not meet this burden.

During the trial, appellants offered Jim Sealy as their expert in architecture and accessibility issues. Appellees objected,

stating he was not proven to be an expert; appellees also objected that Sealy was not qualified concerning the ADA as applied in this particular case. Appellees questioned Sealy on voir dire, and Sealy agreed that he could not testify whether this particular building was in compliance with the ADA because he had not been asked by appellants to make any determination regarding whether the removal of any architectural barriers was readily achievable. The trial court allowed Sealy to testify regarding the ADA and accessibility in general. However, it sustained appellees' objection regarding Sealy's ability to testify whether barrier removal was readily achievable.[5]

Sealy proceeded to testify, and he discussed that he would typically compile a compliance report if he were asked to determine whether a barrier removal task was readily achievable. Although he discussed what he viewed when he went to the facility, the court again sustained appellees' objection to Sealy's testifying regarding whether this particular facility was in compliance; Sealy agreed he had not been requested to compile a compliance report. Sealy said he usually was hired by an owner of a facility. In this case, however, Sealy visited the facility at the request of appellants, and he had not surveyed the area to determine whether any changes that needed to be made were readily achievable.

Regarding the remaining testimony, appellants offered no evidence specific to removing any barrier applicable to the accessibility of the restrooms regarding cost, design, or plan. Accordingly, even if the restrooms did not comply with the ADA, appellants never met their burden of showing that any requested barrier removal was readily achievable. Because appellants did not meet their burden, the trial court properly found for appellees. There-

---

5. Appellants do not complain of this ruling on     appeal.

fore, any error in this complained-of finding and conclusion is harmless. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002) (trial court's incorrect conclusion of law does not require reversal if trial court rendered proper judgment). We resolve appellants' fourth issue against them.

### Welcome Policy / Alternative Methods

In their fifth issue, appellants argue there was no or insufficient evidence to support the trial court's finding that it was appellees' policy that all persons are welcome at Las Colinas Studios and that persons with disabilities were offered reduced ticket prices and a video recording of the items on the second floor. We disagree.

The ADA provides that if the removal of a barrier is not readily achievable, discrimination occurs if the facility fails to make the accommodation available through alternative methods if such methods are readily achievable. *See* 42 U.S.C.A. § 12182(b)(2)(A)(v). The trial court found that appellees had provided an alternative method by which its accommodation was available.

Lewis testified that when he called Las Colinas Studios, he did not receive an offer to view the second-floor tour exhibit items via a video. However, he did testify that he was offered a ticket at a reduced rate. When Knieriem called the Las Colinas Studios, he said he received neither an offer for a reduced rate nor an offer to view the second floor exhibit items on a video. Appellant Holly physically went to Las Colinas Studios, and he too was offered neither a reduced rate nor a video viewing. However, he went on the portion of the tour located on the first floor, and

he did not buy a ticket for that portion of the tour.

Neuss testified that at the time of trial, a video of the second-floor tour exhibit items was available to persons who were unable to access the second floor.[6] He also stated they had been contemplating making the video "for quite some time" in order to make the second floor more accessible. A video of the second floor was played during the trial. And even in their brief, appellants acknowledge the existence of a present video.

Regarding the policy of welcoming all persons to attend the tour, Lewis testified he was discouraged from attending the tour. He said he spoke to someone on the phone—he believed the person's name was Bill. Neuss testified, though, that he recalled no employee by the name of Bill or William. Holly also testified about the response he received when he requested to go on the tour; Neuss testified any such response would be "directly against company policy, and a person that represented [the] company like that would be dismissed." Holly testified he did not report the employee's behavior to anyone in management. Neuss stated the company policy regarding persons with disabilities was to "accept and try to give everyone a full tour of the studio."

We have reviewed all of the evidence regarding the complained-of alternative methods of accessibility. It was up to the trial court to resolve any conflicts or inconsistencies in the testimony. *See F & A Equip. Leasing,* 854 S.W.2d at 684–85. Having reviewed all of the evidence, we conclude the trial court's finding is not against the great weight and preponderance of the evidence and is neither mani-

---

6. Appellants discuss in their brief that the video was made after suit was filed, but they offer no argument or legal authority explaining the significance of this point. According-

ly, we do not reach any such point in our review: any potential issue relative to this point is inadequately briefed. *See* Tex.R.App. P. 38.1(h).

festly unjust, shocking to the conscience, or clearly demonstrative of bias. *See Zieben,* 786 S.W.2d at 799. We resolve appellants' fifth issue against them.

Having resolved all of appellants' issues against them, we affirm the trial court's judgment.