**Affirm and Opinion Filed March 19, 2021**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01350-CV

## MIRAMAR FAIRMOUNT PARTNERS, LLC AND CALABAZA HOLDINGS, LLC, Appellants
## V.
## 2902 MAPLE, LP, ANDERS P. TING AND COMERICA BANK, Appellees

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-10049**

## MEMORANDUM OPINION
Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

Appellee 2902 Maple sued appellants Calabaza Holdings, LLC and Miramar Fairmount Partners, LLC to quiet title and also sought declaratory judgment that a remote/shared parking agreement, called the "Triparty," was forged and therefore void ab initio. Following a bench trial, the court entered judgment quieting title. The court also entered findings of fact and conclusions of law.

In a single issue, Miramar asks this Court to reverse and render judgment in its favor because, despite the trial court finding the Triparty was forged and void ab initio, the unimpeached certificate of acknowledgement attached to the Triparty

conclusively establishes the document was acknowledged by Fred Gauthier (the person who's signature was forged).[1] Calabaza seeks reversal for the same reason. Despite Miramar's and Calabaza's well-presented arguments, we conclude, under the facts of this case, the evidence is legally sufficient to support the trial court's judgment.

Calabaza further argues the trial court improperly granted declaratory judgment. Because the trial court did not grant a declaratory judgment, we need not address Calabaza's arguments.

The issues on appeal are well-settled and the parties are familiar with the underlying facts; therefore, we issue this memorandum opinion. TEX. R. APP. P. 47.1.

**Background**

Because Miramar challenges the legal sufficiency of the evidence, we include only those facts necessary for disposition of the appeal in the light most favorable to the trial court's judgment.

Citizen Uptown, LLC operated a bar on property it leased from Calabaza Holdings, LLC. The bar needed additional parking to comply with the City of Dallas requirements. Imran Sheikh, a managing member with Citizen, reached out to Fred

---

[1] Miramar states its issue as, "Does the trial court's judgment lack legally sufficient supporting evidence because the certificate of acknowledgment conclusively establishes the challenged signature's authenticity?"

Gauthier, an officer of Comerica Bank and a trustee that operated 2902 Maple. On October 13, 2015, Gauthier, as Vice President of Comerica Bank, and Sheikh on behalf of Citizen Upton, signed a six-month parking agreement allowing Citizen Uptown to use fifteen parking spaces located at 2902 Maple.

The City required documentation in its records of remote/shared parking agreements. Around October 15, 2015, Sheikh met Gauthier to review the document, referred to as the Triparty. Sheikh could not recall if a notary was present at this meeting when Gauthier signed the document.

Gauthier signed an old template of the Triparty, and the City allegedly would not accept it. Sheikh arranged to meet Gauthier and Barry Hancock, Calabaza's vice president, on November 2, 2015, to obtain signatures for an updated Triparty. It was undisputed that Sheikh was the point person for getting Gauthier's and Hancock's signatures. Gauthier testified Sheikh brought a two-page document that he signed before Anders Ting, the branch manager of Comerica Bank and a notary public. Gauthier described the document as "an affidavit of some sort supporting that there was a contract for parking between the trust and Mr. Sheikh." Gauthier did not keep a copy of what he signed. In a later email dated July 26, 2016, Gauthier stated, "What I recall signing was a brief document—not this."

Ting testified Gauthier appeared before him on November 2, and Ting notarized a document, but he did not recall what document or how many pages it contained. He no longer had his notary book so he had no record of what he

notarized. Both Ting and Gauthier testified that Gauthier appeared before Ting only one time on November 2.

After acquiring Gauthier's signature and his acknowledgment to some document, Sheikh went to Hancock's office. Hancock testified the document presented to him was incorrect and needed revisions. He called his lawyer and then made changes to the document before signing.

The revised Triparty was recorded in the Dallas County deed records.[2] This Triparty contained a certificate of acknowledgement that stated, "This instrument was acknowledged before me on November 2, 2015 by Frederick J. Gauthier, as Vice President of Comerica Bank, Trustee of the Mary Ann Thompson-Frenk "F" Trust, sole member of 2902 Maple GP, LLC a Texas Limited Liability company, general partner of 2902 Maple LP, a Texas Limited Partnership." The certificate of acknowledgment was a separate and distinct page attached to the Triparty. The acknowledgment certificate did not identify or define what "This instrument" meant and did not contain a footer like the other five pages of the Triparty.[3] Further, the information around Gauthier's forged signature (identifying Owner B, the printed version of his name, and his title) was admittedly filled in by Sheikh.

---

[2] Calabaza and Miramar produced another version of the Triparty during discovery that was attached to an email sent on November 2 at 11:04 a.m. by a Calabaza employee. This version of the Triparty was signed by Hancock, but not Gauthier, yet Ting's acknowledgment page was attached.

[3] Each page of the Triparty, except for the certificate of acknowledgment, had a footer stating, "REMOTE/SHARED PARKING AGREEMENT FOR OAK LAWN SPECIAL PURPOSE DISTRICT (Instrument)-PAGE 1 OF 5 (rev. 6-20-14)."

On July 26, 2016, Gauthier received an email from Hancock stating Calabaza was selling its property to Miramar, and Miramar wanted a signed estoppel certificate ratifying that the Triparty was still in effect. Attached to the email was the estoppel certificate and the Triparty. Gauthier refused to sign the estoppel certificate once he realized his signature on the Triparty was forged, a detail he was unaware of until the email.

2902 Maple sued Calabaza and Miramar to quiet title and also sought a declaratory judgment. The case proceeded to a bench trial.

Sheikh testified the specific details of the transaction "remain somewhat hazy. I mean, I can't remember what I wore last Monday, and that was three years ago." Gauthier, Hancock, and Ting testified about the events on November 2. It was undisputed that Sheikh first obtained Gauthier's signature and then Hancock's signature. It was undisputed Sheikh did not return for Gauthier's signature after Hancock revised the Triparty. The record was unclear as to exactly how or when Ting's acknowledgment page was attached to the disputed Triparty as that version of the document was not presented to Gauthier for his signature.

Sheikh, however, admitted he was under an immense time crunch to file the Triparty with the City by 11:00 am on November 2. He could not explain why there were multiple versions of the Triparty with various signatures and acknowledgment forms, none of which seemed to entirely match. He admitted he had multiple copies

of parking agreements in his possession and "at any given point just when they're all being put together, a page could slip in with a certain agreement and vice versa."

After trial, the court entered judgment quieting title. The parties requested findings of fact and conclusions of law. The trial court issued the following findings of fact relevant to this appeal:

1. Frederick J. Gauthier ("Gauthier") did not sign the "Remote/Shared Parking Agreement for Property" recorded in the real property records of Dallas County on December 15, 2015 as Document 201500329982 (the "Triparty"). . . .

2. Gauthier did have authority to execute the Triparty agreement on behalf of Plaintiff.

3. The signature attached to the Triparty agreement which was alleged to be that of Gauthier was a forgery.

The court made the following conclusions of law:

1. A forged deed is void and passes no title. The Triparty was forged and purported to convey a property right in 2902 Maple which granted the Fairmount Properties a right of possession to use parking on the property located at 2902 Maple in perpetuity.

2. The Triparty was void ab initio and passed no title to Calabaza. And because it was void, and not just voidable, it passed no title or property rights when conveyed by Calabaza to Miramar.

This appeal followed.

**Sufficiency of the Evidence**

A void instrument passes no title, and a forged deed is void ab initio. *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 843 (Tex. App.—Dallas 2011, no pet.). Miramar does not challenge the forgery finding on appeal. Instead, Miramar argues the certificate of acknowledgement is prima facie evidence that Gauthier appeared

before Ting and executed the Triparty for the purposes and consideration therein expressed. *Id.*; *see also Bell v. Sharif-Munir-Davidson Dev. Corp.*, 738 S.W.2d 326, 330 (Tex. App.—Dallas 1987, writ denied). Clear and unmistakable proof that either Gauthier did not appear before Ting or that Ting practiced some fraud or imposition upon Gauthier is necessary to overcome the validity of a certificate of acknowledgment. *Bell*, 738 S.W.2d at 330. Neither party asserts that Ting committed fraud; rather, the dispute centers on whether Gauthier appeared before Ting and acknowledged the Triparty.

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Lewis v. Dallas Soundstage, Inc.*, 167 S.W.3d 906, 912 (Tex. App.—Dallas 2005, no pet.). When a complete reporter's record is filed, the trial court's fact findings may be reviewed for legal and factual sufficiency under the same standards as jury verdicts. *Id.* In doing so we do not substitute our judgment for that of the factfinder, even if we would have reached a different conclusion when reviewing the evidence. *Id.* Rather, when addressing a legal sufficiency challenge, we view the evidence in a light most favorable to the finding, consider only the evidence and inferences that support the finding, and disregard all evidence and inferences to the contrary. *Id.* We uphold the finding if more than a scintilla of evidence exists to support it. *Id.*

Evidence is legally insufficient to support a jury finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence

–7–

from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

Miramar asserts that 2902 Maple's failure to obtain findings impeaching the certificate of acknowledgement means the certificate conclusively established the truth of the its recitals—including that 2902 Maple, through Gauthier, executed the instrument. As a result, Miramar claims the evidence conclusively establishes the opposite of a vital fact and the judgment quieting title should be reversed. Miramar relies on *Bell v. Sharif-Munir-Davidson Development Corp.*, 738 S.W.2d 326, 330 (Tex. App.—Dallas 1987, writ denied).

In that case, Bell allegedly signed a deed and acknowledged it before a notary. *Id*. at 328. Almost two years after closing, Bell was declared non compos mentis. *Id*. His son brought suit alleging that Bell's signature on the deed was forged. *Id*. The trial court granted the defendants' traditional motion for summary judgment.

We held the certificate of acknowledgment was prima facie evidence that Bell appeared before the notary and executed the deed in question. *Id*. at 329. And, even a forged deed could be adopted by the grantor when the grantor subsequently acknowledged the deed unless the grantor provided clear and unmistakable proof that either the grantor did not appear before the notary or that the notary committed some fraud. *Id*. at 330. Because Bell failed to present evidence that he was not

–8–

present when the deed was acknowledged or that the notary perpetuated a fraud, the validity of the execution of the deed was conclusively shown. *Id.* We further relied on other evidence that Bell intended to adopt the deed in question, even if forged, because he accepted and retained the two million dollars he received for the property, invested part of it, recognized the capital gains on his income tax return, and never attempted to repudiate the sale during the time before he was declared non compos mentis. *Id.*

*Bell* is distinguishable from the present facts. Unlike *Bell*, the evidence here establishes that Gauthier did not and could not have appeared before Ting to acknowledge the Triparty. It is undisputed that Sheikh first went to Gauthier's office for him to sign some document, then to Hancock's office where Hancock made changes to the Triparty, and then never returned to Gauthier for him to sign the revised Triparty before filing it with the City. While Gauthier appeared before Ting and acknowledged some document, that document was not the Triparty.

Further, the acknowledgment merely states that Gauthier acknowledged "This instrument" without identifying the document. The record contains two acknowledgment forms for Gauthier showing slight differences in Ting's signatures. Ting testified those were his signatures, but Gauthier only appeared before him once.

The record indicates someone shuffled pages between documents to put together a completed Triparty and filed it with the City. Sheikh admitted he was under an immense time crunch to file the Triparty with the City by 11:00 am on

November 2, and could not explain why there were multiple versions of the Triparty with various signatures and acknowledgment forms, none of which seemed to entirely match. He admitted he had multiple copies of parking agreements in his possession and "at any given point just when they're all being put together, a page could slip in with a certain agreement and vice versa."

Under the facts of this case, we conclude the certificate of acknowledgment does not conclusively establish that Gauthier appeared and executed or adopted the Triparty. *See Shields Ltd. P'ship*, 526 S.W.3d at 480.

In reaching this conclusion, we reject Miramar's assertion that the judgment must be reversed because the trial court refused to issue findings of fact as to whether Gauthier did not appear before Ting to sign the Triparty, despite 2902 Maple's request for such finding. Miramar argues the court's failure to adopt 2902 Maple's proposed finding amounted to a refusal and, therefore, we may not presume any findings as to the acknowledgment on appeal. *See* TEX. R. CIV. P. 299; *see also Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). 2902 Maple responds the trial court did not need to make any such findings because it was unnecessary, and the findings the court made support the judgment. We agree.

Public policy favors the validity of judgments. *See Vickery*, 5 S.W.3d at 251. Thus, there is a general presumption of validity extending to the judgments of courts

of general jurisdiction. *Id.* Without such a presumption, a court's judgment would have very little import and "there would be no end to troublesome litigation." *Id.*

Moreover, the presumption of validity extends to judgments derived with or without the benefit of a jury. *Id.* In fact, the presumption of validity is perhaps even stronger in a bench trial where an experienced judge, as is the case here, exercises the functions of a jury and is charged with the responsibility of assessing the credibility of the witnesses, logically evaluating the evidence, rationally resolving factual disputes on the basis of such evidence, and correctly applying the law to the facts. *Id.* These things the trial court is presumed to have done because the judge is assumed to have conscientiously done his duty. *Id.*

Although the trial court's findings of fact do not include any specific mention of the certificate of acknowledgment, the findings do encompass all the facts necessary to support its conclusions that the Triparty was void and passed no title or property rights to Calabaza or to Miramar when Calabaza sold its property. As such, we need not presume any facts. *See, e.g., City of Brownsville v. Longoria*, No. 13-12-00224-CV, 2014 WL 1370115, at \*10 (Tex. App.—Corpus Christi-Edinburg Apr. 3, 2014, pet. denied) (mem. op.) (concluding no presumption of facts needed when all essential facts for resolution of issue were found in findings). By finding that Gauthier did not sign the Triparty recorded in the deed records and the signature attached to the Triparty was a forgery, the court necessarily found that Gauthier did not appear before Ting on November 2 and acknowledge the Triparty. If Gauthier

did not sign the Triparty, which he did not because it was forged, then when he appeared before Ting and acknowledged some document the morning of November 2, the court recognized based on the evidence in this case, the document could not have been the Triparty.

We reject Miramar's invitation to reverse a judgment based on a procedural technicality regarding the rules of findings of fact and conclusions of law. The trial court's failure to include 2902 Maple's requested finding of fact was not "tantamount to a refusal" thereby requiring 2902 Maple to either request additional findings or lose the presumption in support of the judgment for omitted elements. *See* TEX. R. CIV. P. RS. 298, 299. Rather, as explained above, the court made the necessary findings to support the judgment. We overrule Miramar's legal sufficiency challenge.

Calabaza joined Miramar in arguing that the trial court's judgment was legally insufficient. For the reasons stated above, and because Calabaza has not challenged whether it was a proper party to the suit to quiet title, we likewise overrule Calabaza's sufficiency challenge.

We need not address 2902 Maple's cross-issue in which it argues, in an abundance of the caution, that the trial court erred by failing to enter findings of fact that Gauthier did not appear before Ting with respect to the Triparty. TEX. R. APP. P. 47.1.

## Declaratory Judgment and Attorneys' Fees

Calabaza argues the trial court erred by granting a declaratory judgment because there was no justiciable controversy between it and 2902 Maple.

The trial court did not grant a declaratory judgment. Rather, the final judgment provided that "all claims by the Plaintiff relate solely to clearing title to the real property and that the claims made under the Texas Declaratory Judgments Act are surplusage and improperly pled for the sole purpose of seeking attorneys' fees for claims which do not otherwise entitle any of the parties to such fees." After considering the pleadings and evidence, we strongly agree with the trial court's decision that this was nothing more than a suit to quiet title. Thus, we need not address Calabaza's arguments. TEX. R. APP. P. 47.1.

To the extent Calabaza and 2902 Maple challenge the trial court's failure to award attorneys' fees under the Declaratory Judgment Act, their issues are without merit. A party is not entitled to recover fees for claims that merely duplicate other affirmative claims for which fees are unrecoverable. *See MBM Fin. Corp. v. Woodlands Operating Co*., 292 S.W.3d 660, 669 (Tex. 2009); *see also CBIF Ltd. P'ship v. TGI Friday's Inc*., No. 05-15-00157-CV, 2017 WL 1455407, at *12 (Tex. App.—Dallas Apr. 21, 2017, pet. denied). Attorneys' fees are not available in a suit to quiet title or to remove cloud on title. *See AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 588 (Tex. App.—Dallas 2008, no pet.). Thus, the parties had no legal vehicle available from which to recover fees. As such, the trial court acted within

its discretion by denying all parties recovery of their attorneys' fees. *See Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 313 (Tex. App.— Houston [1st Dist.] 2010, pet. denied) (trial court may decline to award attorney's fees to either party).

## Conclusion

Having considered and overruled the issues and cross-issues presented by Miramar, Calabaza, and 2902 Maple, we affirm the trial court's judgment as to these parties. We likewise affirm the trial court's judgment as to appellees Comerica Bank and Anders P. Ting because appellants have not raised any appellate issues as to either party.

191350f.p05

Craig Smith
CRAIG SMITH
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MIRAMAR FAIRMOUNT
PARTNERS, LLC AND
CALABAZA HOLDINGS, LLC,
Appellants

No. 05-19-01350-CV        V.

2902 MAPLE, LP, ANDERS P.
TING AND COMERICA BANK,
Appellees

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-16-10049.
Opinion delivered by Justice Smith.
Justices Schenck and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 19th day of March, 2021.