BALDOCK, Circuit Judge.
Defendant Hermanson Family Limited Partnership I owns certain commercial buildings in Larimer Square, an historic block of shops and restaurants located in downtown Denver, Colorado. Plaintiff Kevin W. Williams is a Denver attorney who, as a result of a spinal cord injury, is paralyzed from the chest down and uses a power wheel chair for mobility. Since he moved to Denver around 1990, Plaintiff Williams has visited Larimer Square frequently. On his trips to Larimer Square, Plaintiff Williams noticed that architectural barriers prevented him from accessing many of the stores. Specifically, a 5.5 inch iron stoop at the entrance to the Crawford Building, owned by Defendant, prevents wheelchair access. In addition, the door to the store is recessed from the storefront and adds another barrier to wheelchair access of one to three inches.
In 1996, Plaintiff Williams and his employer, the Colorado Cross Disability Coalition, filed four separate lawsuits in the federal district court against Defendants under Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 thru 12189, and the Colorado Anti Discrimination Act, Colo.Rev.Stat. §§ 24-34-601 thru 24-34-605. In their suits, Plaintiffs asked the district court to compel Defendants to install ramps at four locations in Larimer Square.[1] The district court consolidated the cases for both discovery and trial.
The consolidated cases proceeded to a bench trial. At the close of Plaintiffs case, the district court granted Defendants’ motions for judgment as a matter of law, see Fed.R.Civ.P. 52(c), concluding that Plaintiff failed to establish that removal of architectural barriers at the four locations was readily achievable. Plaintiff appeals the district court’s ruling as to only one of the four locations, the Crawford Building. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo a district court’s grant of a motion for judgment as a matter of law, construing the evidence and inferences therefrom in the light most favorable to the nonmoving party. Shaw v. AAA Eng’g & Drafting, Inc., 213 F.3d 519, 529 (10th Cir.2000). Applying this standard, we affirm.
I.
Title III of the ADA prohibits discrimination against persons with disabilities in places of public accommodation. 42 U.S.C. § 12182(a). The ADA provides a private right of action for preventative relief, including an application for a permanent or temporary injunction or restraining order *1002 for “any person who is being subjected to discrimination on the basis of disability in violation of’ Title III. Id. §§ 12182(a)(1), 2000a-3(a). A successful plaintiff may also be entitled to attorney fees and costs. Id. § 2000a-3(b). Section 12182(a) provides: “No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.” Id. § 12182(a). Under Title III of the ADA, “discrimination” specifically includes “failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable.” Id. § 12182(b)(2)(A)(iv).[2]
The ADA defines “readily achievable” as “easily accomplishable and able to be carried out without much difficulty or expense.” Id. § 12181(9). The ADA further sets out several factors to be considered in determining whether removal of architectural barriers is readily achievable: (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity with respect to the number of its employees; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities, in question to the covered entity. Id. § 12181(9)(A)-(D); see also First Bank Nat’l Ass’n v. FDIC, 79 F.3d 362, 370 n. 8 (3d Cir.1996).
Title III of the ADA, however, remains silent as to who bears the burden of proving that removal of an architectural barrier is, or is not, readily achievable. See Pascuiti v. New York Yankees, No. 98 CIV. 8186(SAS), 1999 WL 1102748, at *1 (S.D.N.Y. Dec.6, 1999) (unpublished). Plaintiff argues that subsection (iv), when read in conjunction with subsection (v), places the burden on Defendant to prove the proposed architectural barrier removal is not readily achievable. Subsection (v) states that discrimination includes, “ivhere an entity can demonstrate that the removal of a harrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.” 42 U.S.C. § 12182(b)(2)(A)(v) (emphasis added). Subsection (v) clearly contemplates that the entity, rather than the plaintiff, bears the burden to demonstrate that barrier removal under subsection (iv) is not readily achievable. Read together, subsections (iv) and (v) provide an affirmative defense for an entity. Accordingly, we conclude Plaintiff must initially present evidence tending to show that the suggested method of barrier removal is readily achievable under the particular circumstances. If Plaintiff does so, Defendant then bears the *1003 ultimate burden of persuasion that barrier removal is not readily achievable under subsection (iv).[3]
Placing the burden of persuasion on Defendant to prove the affirmative defense that barrier removal is not readily achievable is consistent with the remaining subsections of Title III. Section 12182(b)(2)(A)(i) provides that discrimination includes the imposition of eligibility criteria that “screen out” or “tend to screen out” individuals with disabilities unless the eligibility criteria can be shown to be necessary.[4] Several district courts have placed the burden of showing that the eligibility criteria are necessary on the proponent of such criteria. See Hahn ex rel. Barta v. Linn County, Iowa, 130 F.Supp.2d 1036, 1055 (N.D.Iowa 2001) (“Eligibility criteria that ‘screen out’ or ‘tend to screen out’ disabled individuals violate the ADA unless the proponent of the eligibility criteria can show that the eligibility requirements are necessary.”); Bowers v. NCAA, 118 F.Supp.2d 494, 518 (D.N.J.2000) (same), opinion amended on reargument, 130 F.Supp.2d 610 (D.N.J. 2001); Guckenberger v. Boston Univ., 974 F.Supp. 106, 134 (D.Mass.1997) (“[P]ublic entities cannot use eligibility criteria that screen out or tend to screen out individuals with disabilities unless they can show that the criteria are necessary.”).
Similarly, sections 12182(b)(2)(A)(ii) and (iii) provide an affirmative defense for an entity to demonstrate that compliance would fundamentally alter the nature of the goods and services provided.[5] Consequently, the entity bears the burden of persuasion regarding fundamental alteration and undue burden. See Johnson v. Gambrinus Co./Spoetzl Brewery, 116 F.3d 1052, 1059 (5th Cir.1997) (under subsection (ii) modification claim, defendant bears “burden of proving that the requested modification would fundamentally alter the nature of the public accommodation”); Mayberry v. Von Valtier, 843 F.Supp. 1160, 1166 (E.D.Mich.1994) (shifting burden of proof to defendant in subsection (iii) ease).
In Johnson, 116 F.3d at 1059, the Fifth Circuit addressed the burden of proof in a § 12182(b)(2)(A)(ii) reasonable modifica *1004 tion claim. The court held that the plaintiff bears the burden of proving that a modification was requested and that the requested modification was reasonable. Id. Once the plaintiff meets the burden of showing that an accommodation is reasonable in the general sense, the court held the defendant must make the requested accommodation unless defendant pleads and meets its burden of proving that the requested accommodation would fundamentally alter the nature of the public accommodation. Id. The plaintiff bears the ultimate burden of proof on the issue of reasonableness, while the defendant bears the burden of proving the requested accommodation would fundamentally alter the nature of the public accommodation. Id.
Several district courts have adopted Johnson’s allocation of the burden of proof in subsection (ii) cases. See Dahlberg v. Avis Rent A Car Sys., Inc., 92 F.Supp.2d 1091, 1105-06 (D.Colo.2000) (adopting Johnson); Bingham v. Oregon Sch. Activities Ass’n, 24 F.Supp.2d 1110, 1116-17 (D.Or.1998) (under subsection (ii), “[o]nce plaintiff establishes that the requested accommodation is reasonable in a general sense, the burden shifts to the defendant to prove that the modification is unreasonable under the circumstances, that such would fundamentally alter the nature of the public accommodation or otherwise work an undue hardship on the entity.”). Our conclusion that Congress also intended to create an affirmative defense for an entity to establish a proposed barrier removal is not readily achievable under subsection (iv) once Plaintiff meets the initial burden of tending to show barrier removal is readily achievable comports with the remaining subsections of Title III setting forth affirmative defenses.
The Department of Justice (DOJ) Regulations regarding Title III similarly support our conclusion that “readily achievable” is an affirmative defense.[6] The regulations specifically refer to the “readily achievable defense.” 28 C.F.R. Pt. 36, App. B. at 647 (2000). Furthermore, the regulations compare the “readily achievable defense” to the “undue burden defense” of § 12182(b)(2)(A)(iii), which limits a public accommodation’s obligation to provide auxiliary aids, and the “undue hardship defense” of § 12112(b)(5)(A), which limits an employer’s obligation to make reasonable accommodations in the employment context. Id. While the regulations state the readily achievable defense is less demanding than the undue burden or undue hardship defenses, they nevertheless explicitly place the burden of persuasion on the entity. Id.
While no circuit court has addressed the issue of who bears the burden of proving readily achievable under subsection (iv), several district courts have done so.[7] In *1005 Pascuiti, 1999 WL 1102748, at *1, after considering the text of Title III, its legislative history, and implementing regulations, the district court allocated the burden of proof on the issue of whether the removal is readily available in the following manner: “The plaintiffs bear the initial burden of suggesting a method of barrier removal and proffering evidence that their suggested method meets the statutory definition of ‘readily achievable.’ ” The court further stated that plaintiffs must consider the factors identified in § 12181(9) and proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal. Id. at *4. “If. plaintiffs satisfy their- burden of proffering evidence that a suggested method of barrier removal can be accomplished easily and without much difficulty or expense, the burden then shifts to the [defendants] to rebut that showing and prove that the suggested method is not readily achievable.” Id. at *5. Finally, the court noted that “[pjlacing this burden on the defendant gives meaning to subsection (v), which contains the phrase ‘where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable.’ 42 U.S.C. § 12182(b)(2)(A)(v).” Id.
The district court employed a similar approach in Parr v. L & L Drive-Inn Rest., 96 F.Supp.2d 1066, 1085 (D.Haw.2000). Citing Gilbert v. Eckerd Drugs, No. Civ. A. 97-3118, 1998 WL 388567, at *2 (E.D.La. July 8, 1998) (unpublished),[8] and Pascuiti, 1999 WL 1102748, at *5, the district court concluded that “[t]o succeed on an ADA claim of discrimination on account of one’s disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant’s place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.” Id. (emphasis in original). The court discussed the shifting burden, stating, “[i]f Plaintiff satisfies his burdens, he has made out a prima facie case of discrimination, upon which the burden shifts to Defendant to present sufficient evidence to rebut such a showing.” Id. While the court in Pascuiti shifted the burden of persuasion to Defendant, the court in Parr appears to have shifted only the burden of production to Defendant.
We find the burden allocation of Pascuiti to be well-reasoned and consistent with the language of Title III of the ADA. We therefore adopt the same approach wherein Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier remov *1006 al is readily achievable, i.e., can be accomplished easily and without much difficulty or expense. If Plaintiff satisfies this burden, Defendant then has the opportunity to rebut that showing. Defendant bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable. See 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 65 (1994) (“[T]he defendant bears the burden of persuasion on affirmative defenses.”).[9]
Further, our conclusion that subsections (iv) and (v), read together, place the burden of persuasion on Defendant to prove the affirmative defense that barrier removal is not readily achievable comports with the overall operation of the ADA. The ADA has three separate titles: Title I covers employment discrimination, 42 U.S.C. §§ 12111-12117; Title II covers discrimination by government entities, Id. §§ 12131-12165; and Title III covers discrimination by places of public accommodation, Id. §§ 12181-12189. Title I provides that impermissible employment disability discrimination includes “not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.” Id. § 12112(b)(5)(A). “ ‘The employer ... bears the burden of persuasion on whether a proposed accommodation would impose an undue hardship.’ ” Rascon v. U.S. West Communications, Inc., 143 F.3d 1324, 1334 (10th Cir.1998) (quoting Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir.1997)); see also Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir.2001) (discussing the “burdens of showing reasonable accommodation and undue hardship as they appear in the statute: the plaintiff fully bears the former, and the defendant fully bears the latter.”). But see White v. York Intern. Corp., 45 F.3d 357, 361 (10th Cir.1995) (shifting burden of production, not persuasion, to defendant to present evidence of its inability to accommodate).
Similarly, Title II states that “no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.” 42 U.S.C. § 12132. The DOJ regulations provide: “A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and useable by individuals with disabilities.” 28 C.F.R. § 35.150(a). Under the regula *1007 tions, however, a public entity is not required to “take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens.” 28 C.F.R. § 35.150(a)(3). Further, the regulations specifically state that “a public entity has the burden of proving that compliance with § 35.150(a) of this part would result in such alterations or burdens.” Id; see also Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.2000).
According to the plain language of Title III and the allocation of burdens we have adopted, Plaintiff must initially introduce evidence tending to establish that the proposed method of architectural barrier removal is “readily achievable,” i.e., “easily accomplishable and able to be carried out without much difficulty or expense” under the particular circumstances. 42 U.S.C. § 12181(9). Only if Plaintiff satisfies this initial burden does the burden of persuasion shift to Defendant to prove that the requested barrier removal method is not readily achievable.
II.
We now turn to the question of whether Plaintiff in this case produced sufficient evidence to satisfy his burden that his suggested method of barrier removal is readily achievable. At trial, Plaintiff introduced evidence regarding the installation of a ramp at the entrance to the Crawford Building. Plaintiff called Nore Winter, an expert in historical preservation in architecture and urban design. Winter owns a company called Winter & Company, which provides consultation to property owners, architects, and municipalities in developing preservation policies and design concepts. Winter testified that the front entrance to the Crawford Building could be made accessible without threatening or destroying the historic significance of the building or the district.
Winter prepared a sketch for a concept of a warped-plane sidewalk to provide access to the Crawford Building. He testified that did not intend for the sketch to be a construction drawing, but rather to illustrate an approach for achieving accessibility that would be compatible with the historic character of the building. Winter acknowledged that his sketch was “conceptual.” Further, he stated that “[w]hen you start talking about real building design, et cetera, it’s going to take a team of collaboration of all the parties involved with all the different viewpoints and interests to come up with the solutions that are going to best meet everyone’s needs.” Winter did not provide precise cost estimates. Instead, he estimated probable costs associated with the ramps of $10,750 based on his experience with similar projects. Winter testified that he reviewed a report by John Salmen, Defendant’s consultant. According to Winter, Salmen’s report suggested that Winter’s approach would be valid, but Salmen would recommend extending the ramp out the full width of the sidewalk.
On cross-examination, Winter appeared to be unaware that the rise of the threshold of the building was three inches, bringing the total rise from the sidewalk elevation into the building to nine inches.[10] To address the nine-inch rise, Winter suggested extending the elevation out for the full width of the sidewalk. When cross examined about designing the ramp to accom *1008 modate both wheelchair access and people with vision impairments who could fail to discern the change in grade and trip on such a ramp, Winter responded that—
you’re getting beyond what my focus has been, which is on the historic impacts on these properties. As I stated earlier, I would work in collaboration with the design team to help solve these kinds of problems and these kinds of questions. I can’t give you the design for that altering of the ramp right here.
Winter also suggested slanting the stoop to address the nine-inch rise. He acknowledged, however, that “I haven’t really inspected this, but only to say I believe it could be possible.”
Plaintiff next presented the testimony of expert accountant Robert Aucone regarding Defendant’s financial resources. Au-cone concluded that the financial impacts of installing ramps would be relatively immaterial and easily accomplishable. Au-cone testified that in his opinion, even if the actual cost of a ramp was twice as much as estimated, his opinion would not change.
Plaintiff further introduced testimony and documentary evidence that Defendant and its predecessor had received estimates to ramp the Crawford Building. Plaintiff called Susan Spencer, the general manager of Larimer Square from 1986 until 1995. Spencer acted as general manager when Defendant purchased the Crawford Building in 1993. As general manager of Lar-imer Square, Spencer’s duties included property management and leasing responsibilities. In addition, Spencer’s responsibilities included discerning costs and making recommendations concerning whether ramps would be installed at buildings in Larimer Square. In July 1992, Rich Langston, a contractor, sent Spencer an estimate for a ramp at the Crawford building in the amount of $2,195.00. In the memo, Langston recommended against the ramp because it would require cutting the iron stoop. In November 1992, Langston sent Spencer an estimate in the amount of $2,272.00 to ramp the Crawford Building.
Spencer testified that she considered ramping the Crawford Building, but decided against it. According to Spencer, a ramp extending to the side of the building would have extended into the doorway or into the neighboring property. Further, Spencer expressed concern that a ramp extending straight out from the building would have created a trip hazard for persons with visual impairments.
Finally, Plaintiff introduced Title III DOJ regulations and commentary concerning whether a method of architectural barrier removal is readily achievable under subsection (iv). The regulations specifically list “[finstalling ramps” as an example of barrier removal under § 12182(b)(2)(A)(iv). 28 C.F.R. § 36.304(b)(1). The commentary points out, however, that
the inclusion of a measure on this list does not mean that it is readily achievable in all cases. Whether or not any of these measures is readily achievable is to be determined on a case-by-case basis in light of the particular circumstances presented and the factors listed in the definition of readily achievable (§ 36.104).
28 C.F.R. Pt. 36, App. B at 647 (2000). The commentary further explains when ramping steps may be required:
A public accommodation generally would not be required to remove a barrier to physical access posed by a flight of steps, if removal would require extensive ramping or an elevator. Ramping a single step, however, will likely be readily achievable, and ramping several steps will in many circumstance also be readily achievable.
*1009 Id. The DOJ regulations also urge public accommodations—
to comply with the barrier removal requirements of this section in accordance with the following order of priorities.
(1) First, a public accommodation should take measures to provide access to a place of public accommodation from public sidewalks, parking, or public transportation. These measures include, for example, installing an entrance ramp....
28 C.F.R. § 36.804(c)(1).
While the regulations specifically mention ramping a single step as a top priority and likely to be readily achievable, the regulations also state that whether removal of a barrier is readily achievable is subject to a case by case inquiry. 28 C.F.R. Pt. 36, App. B at 647. Accordingly, Plaintiff must show that installation of a ramp at the Crawford Building is readily achievable in light of the particular circumstances.
While this is a close case, we conclude Plaintiff introduced evidence regarding only speculative concepts of ramp installation, rather than evidence that a specific design was readily achievable. For instance, Plaintiff failed to present any evidence to establish the likelihood that the City of Denver would approve a proposed modification to the historical building. Plaintiff also failed to provide any precise cost estimates regarding the proposed modification. Perhaps most importantly, Plaintiffs expert testimony failed to demonstrate that under the particular’ circumstances installing a ramp would be readily achievable. Instead, expert Winter provided speculative conceptual ideas, rather than a specific design which would be easily accomplishable and able to be carried out without much difficulty or expense. Winter acknowledged that his sketch was conceptual and that he did not intend the sketch to be a construction drawing. Notably, Winters appeared unaware of the exact height of the architectural barrier.
While the regulations state that ramping a single step will likely be readily achievable, such an inquiry must be based on a case by case basis under the particular circumstances and factors listed in the definition of readily achievable. Because Plaintiff failed to present sufficient evidence that removal of the architectural barrier is readily achievable, the district court properly granted Defendant’s motion for judgment as a matter of law.
The judgment of the district court is AFFIRMED.

. Colorado Cross Disability Coalition, originally a plaintiff in this case, was dismissed on its own motion before trial.

. Section 12182(b)(2)(A)(iv) provides in full that discrimination includes:
[A] failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of hydraulic or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable!)]

. We note that in its answer to Plaintiffs complaint, Defendant’s second affirmative defense stated that "Plaintiff’s claims are barred because the proposed alterations are not readily achievable.”

. Subsection (i) states in full that discrimination includes:
The imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodation being offered.

. Subsections (ii) and (iii) state that discrimination includes:
(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, setvices, facilities, privileges, advantages, or accommodations;
(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden [.]
42 U.S.C. §§ 12182(b)(2)(A)(ii), (iii) (emphasis added).

. The Supreme Court has given significant deference to the DOJ's Title III regulations. See Bragdon v. Abbott, 524 U.S. 624, 646, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (noting with approval "the administrative guidance issued by the Justice Department to implement the public accommodation provisions of Title III of the ADA. As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department's views are entitled to deference.") (citing Chevron v. Natural Res. Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

. Plaintiff relies on Lieber v. Macy’s West, Inc., 80 F.Supp.2d 1065, 1077 (N.D.Cal.1999) as interpreting subsection (iv) to create an affirmative defense wherein the defendant must prove that a proposed method of barrier removal is not readily achievable. The district court in Lieber, however, inexplicably applied subsection (ii) to the plaintiff’s barrier remov *1005 al case. Id. The court stated, "Plaintiffs also bear the burden of putting forward reasonable modifications. The burden then shifts to [defendant] to show that the requested modifications would fundamentally alter the nature of its public accommodation.” In support of its burden shifting approach, the court in Lieber cited Martin v. PGA Tour, 994 F.Supp. 1242 (D.Or.1998); aff’d, 531 U.S. 1049, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001). Martin involved claims under subsection (i), which forbids the imposition of eligibility criteria which tend to screen out individuals with disabilities unless the eligibility requirements are necessary, and subsection (ii), which forbids the failure to make reasonable policy modifications where such modifications are necessaiy to allow access to individuals with disabilities.

. In Gilbert, 1998 WL 388567, at *2, the district court simply stated without analysis,that, to succeed on his claim that the defendant had failed to remove architectural barriers in violation of the ADA, the plaintiff had to “prove both that (1) the existing facilities at Defendants’ places of business present an 'architectural barrier’ under the ADA, and (2) the removal of the 'barrier' is 'readily achievable' under the ADA.” Without analyzing the burden of proof, the district court denied plaintiffs motion for summary judgment.

. We agree with the First Circuit’s conclusion that the McDonnell Douglas burden shifting approach does not apply to ADA discrimination claims based on § 12182(b)(2)(A). Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 n. 3 (1st Cir.2001). As the court explained,
The burden-shifting model was introduced into employment law in order to allow indirect proof of the often elusive ’'intent” to discriminate. Thus, burden shifting allows a plaintiff to make a small showing of discrimination, whereupon the employer must articulate a nondiscriminatory reason for its actions, and if that reason proves to be untrue, then an inference of discrimination may be warranted. By contrast, whether a requested accommodation is reasonable or whether it imposes an undue hardship are questions typically proved through direct, objective evidence. Accordingly, we have already held that the McDonnell Douglas model does not apply to ADA discrimination claims based on failure to reasonably accommodate.
Id. (citations omitted). This reasoning applies equally to discrimination claims based on failure to remove architectural barriers.

. In his response brief, Plaintiff claims that the record contains no evidence that any additional step or height existed at the Crawford Building at the time of the litigation. Plaintiffs exhibit 3, however, clearly shows an additional step at the doorway beyond the initial step. Winter, nevertheless, appeared unaware of this additional rise.