[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2006
THOMAS K. KAHN
CLERK

No. 05-14229

D. C. Docket No. 02-01978 CV-WSD-1

MARGO GATHRIGHT-DIETRICH,
BONNIE BONHAM,

Plaintiffs-Appellants,

versus

ATLANTA LANDMARKS, INC.,
a.k.a. Fox Theatre,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(June 23, 2006)**

Before DUBINA, MARCUS and PRYOR, Circuit Judges.

DUBINA, Circuit Judge:

Appellants, Margo Gathright-Dietrich and Bonnie Bonham, appeal the district court's order granting summary judgment to appellee, Atlanta Landmarks, Inc., on their claim pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.*  For the reasons that follow, we affirm.

## I.  BACKGROUND

The venue at issue in this appeal is The Fox Theatre ("The Fox") in Atlanta, Georgia, which was designed in the late 1920's.  The Fox serves the Atlanta area as an unique and opulent entertainment center.  The Fox is owned and operated by Atlanta Landmarks, Inc., a non-profit organization that led a successful community-wide effort to "Save The Fox" in the 1970's.  The Fox contains significant historic features ranging from its seating configuration, to its simulated night-sky ceiling, to its faux painting techniques, to its original DC current-run elevators with AC converters.  Because of these unique features, in 1974, the National Register of Historic Places added The Fox to its list.  In 1976, the United States Department of the Interior designated The Fox a National Historic Landmark.  Additionally, in 1991, due to its architectural and historical significance, The Fox became one of only nine buildings in the State of Georgia to be designated a Landmark Museum Building by the State Historic Preservation Officer of the Georgia Department of Natural Resources.

Prior to the passage of the ADA, The Fox installed removable theater seats to accommodate individuals in wheelchairs and created wheelchair-accessible restrooms. From the mid-1980's and throughout the 1990's, The Fox continued its efforts to make the theater more disabled-accessible, including (1) the installation of an elevator to give disabled patrons access to the theater's ballrooms; (2) the installation of a wheelchair-accessible box office; (3) the installation of a wheelchair-accessible telephone; (4) the addition of four new wheelchair-accessible restrooms; (5) the addition of a wheelchair-accessible concession area on the mezzanine level of the theater; and (6) the installation of a ramp to give performers, patrons, and visitors in wheelchairs access to the stage.

In 1996, The Fox implemented its "Ambassador Program" through which it trains a select group of volunteer ushers in how best to accommodate and assist The Fox's disabled patrons. As a result of these efforts, The Fox's current amenities and policies include between 19 and 25 wheelchair-accessible seating positions with companion seats located throughout the orchestra level; nine aisle seats with removable armrests at various locations on the orchestra level; a ticket-pricing policy that includes the option of paying the lowest ticket price for every show if you are a disabled patron; seven wheelchair-accessible restrooms; wheelchair-accessible concession areas; wheelchair-accessible drinking fountains;

a wheelchair ramp to enable patrons who use wheelchairs to utilize the south exit of the theater; and many more "disabled-friendly" policies.

Appellants, undisputed patrons of the arts, have attended numerous events at The Fox. They filed suit under Title III of the ADA alleging that they and other wheelchair patrons are denied access to events at The Fox comparable to the access given to non-wheelchair patrons. Specifically, the appellants asserted that certain areas designated for wheelchair patrons are physically inaccessible to them; that the quality of their access is inferior; and that barriers exist in connection with ticket pricing and sales at The Fox. Following discovery, The Fox filed a motion for summary judgment, contending that the ADA did not mandate removal of any alleged architectural barriers. The district court granted The Fox's motion, finding that although the appellants proved that there were seating barriers, they failed to meet their burden of production to demonstrate that removal of those barriers was "readily achievable." In so ruling, the district court adopted the approach followed by the Tenth Circuit in *Colorado Cross Disability Coalition v. Hermanson Family Limited Partnership I*, 264 F.3d 999 (10th Cir. 2001), the only appellate decision addressing the issue. The district court also found that the changes that The Fox had already made to accommodate wheelchair

4

patrons at the theater were sufficient to satisfy the ADA. Appellants filed a timely appeal.

## II. ISSUE

Whether the district court erred in granting summary judgment to The Fox because it determined that appellants could not meet their burden of production on the issue of whether their proposed modifications relating to wheelchair seating at The Fox were "readily achievable" under Title III of the ADA.

## III. STANDARD OF REVIEW

This court reviews the district court's order granting summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004).

## IV. DISCUSSION

A. *Title III of the ADA*

The ADA is comprehensive legislation that addresses discrimination against disabled individuals. The ADA has three sections: Title I regulates discrimination in the workplace; Title II prohibits discrimination by public entities; and Title III prohibits discrimination by private entities in places of public accommodation. Title III applies to the present case and provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

5

privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). Congress enacted the ADA on January 25, 1993. After this date, facilities have to meet exacting design and implementation standards to be in compliance with the ADA. The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date. For those facilities, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal is not "readily achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA. 42 U.S.C. § 12182(b)(2)(A)(v).

The ADA defines "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable." These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall

6

financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. *Id.*

"The Department of Justice [] has interpreted the ADA's barrier removal and alteration requirements in accordance with the Congressional desire to take into account the national interest in preserving significant historical buildings." *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 628-29 (D. Md. 2002). Thus, in the context of an historic building, "barrier removal would not be considered 'readily achievable' if it would threaten or destroy the historic significance of [the] building." *Id.* at 629 (quoting ADA Title III DOJ Technical Assistance Manual § III-4.4200). The alterations to the historic building need only comply with the accessibility standards "to the maximum extent feasible." 28 C.F.R. § 36.405(a). The ADA's implementing regulations provide specific procedures for determining feasibility, and the regulations state that "[i]f it is determined . . . that it is not feasible to provide physical access to an historic property . . . in a manner that will

not threaten or destroy the historic significance of the building or facility, alternative methods of access shall be provided. . . ." 28 C.F.R. § 36.405(b).

B. *Application of Standard*

Appellants argue on appeal that the district court erred in applying the burden of proof established in *Colorado Cross*. Under this approach, the plaintiff has the initial burden of production to show (1) that an architectural barrier exists; and (2) that the proposed method of architectural barrier removal is "readily achievable," i.e., "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case. *Colorado Cross*, 264 F.3d at 1007. If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Id.* at 1002-03; *see also White v. Cinemark USA, Inc.*, 2005 WL 1865495 at *6 (E.D. Cal. 2005); *Access Now, Inc. v. So. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001); *Ass'n for Disabled Ams., Inc. v. Claypool Holdings LLC*, 2001 WL 1112109 at *26 (S.D. Ind. 2001); *Pascuiti v. New York Yankees*, 1999 WL 1102748 at *4 (S.D.N.Y. 1999).

Appellants do not object to the general burden-shifting framework articulated by these cases, but instead, object to the amount and specificity of evidence required to meet their burden of showing that barrier removal was

8

"readily achievable." Appellants contend that in order to meet their burden of production on this issue, the district court held that they must present evidence of "(1) a specific design to remove the barriers alleged; (2) the cost of removal or of the proposed remedy; and (3) the effect on the finances and operation of the facility." [R. Vol. 7, Doc. 107, p. 21]. Because of the expense involved in drafting what amounts to a "pre-approved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits," the appellants argue that this standard guarantees that "virtually no plaintiff could afford to bring an architectural barrier removal claim. . . ." *Colorado Cross*, 264 F.3d at 1011 (Lucero, J., dissenting). We disagree.

The district court did not err in following the burden of proof enunciated in *Colorado Cross*, and we adopt that burden shifting framework for the reasons articulated by the *Colorado Cross* court. Moreover, the district court did not impose too heavy a burden on appellants to show that barrier removal was "readily achievable." The appellants did not satisfy their burden of production to show that a vast majority of the alleged conditions they cited, ranging from ticket pricing and sales policies, to restrooms and concession areas, constituted barriers to access for wheelchair patrons under the ADA. As for the alleged seat-number barrier, the appellants could not meet their burden of showing that the barrier

removal was "readily achievable." Under the standard enunciated in *Colorado Cross*, a plaintiff must present sufficient evidence so that a defendant can evaluate the proposed solution to a barrier, the difficulty of accomplishing it, the cost implementation, and the economic operation of the facility. Without evidence on these issues, a defendant cannot determine if it can meet its subsequent burden of persuasion.

In this case, appellants submitted three proposed options relating to wheelchair seating, but they failed to produce any reliable evidence that those proposals were "readily achievable." Appellants' seating proposals involved the addition of at least 27 wheelchair seating positions, as well as modification of the existing wheelchair locations. Appellants' expert proposed three options: (1) The Fox could provide additional seating in existing level areas; (2) The Fox could remove rows of existing seats and modify the floor slab to create new inset sections on the orchestra level; and (3) The Fox could add raised platforms at various locations throughout the theater. However, these proposals were non-specific, conceptual proposals that did not provide any detailed cost analysis. Appellants did not provide any evidence of the number of seats lost, the number of wheelchair and companion seats gained, where they could be located, what it would cost to implement them, or what effect they could have economically or

operationally on the theater. Appellants also failed to provide expert testimony to assure the feasibility of their proposed seating modifications and did not, in any meaningful way, address the engineering and structural concerns associated with their proposals or the effect that those proposals would have on the historic features of the theater.

Additionally, appellants failed to show that their proposed modifications were inexpensive. Not only did appellants fail to produce a financial expert to link the estimated costs of their proposals with The Fox's ability to pay for them, they failed to take even the rudimentary steps of formulating what those estimated costs might be or providing any evidence of The Fox's financial position and ability to pay those costs. The only "evidence" presented by the appellants of the costs associated with their proposed modifications consists of testimony by an ADA expert who summarily opined that some of the proposed modifications would be "low-cost" or "inexpensive," while others would be "more expensive," and that some modifications would cost similarly to previous modifications. Accordingly, we conclude that the district court did not err in finding that the appellants could not meet their burden of production for barrier removal.

Assuming *arguendo* that the evidence proffered by appellants did satisfy their burden of production for barrier removal, we conclude that the district court's

11

grant of summary judgment would still be appropriate because The Fox rebutted any showing by establishing that removal of the alleged barriers could not be accomplished without much difficulty or expense. The Fox presented undisputed evidence that lowering a portion of the floor, as appellants proposed, would directly affect the historic nature of the theater; the actual seating configuration in the theater is a character-defining feature of The Fox, and the permanent removal of seats would require the approval of the State Historic Preservation Officer; the floor that would be affected by appellants' proposals is historically significant; the implementation of certain of appellants' proposals would involve closing the theater for a period of time; the appellants' proposals would result in the elimination of seats belonging to season ticket holders; and a decrease in the number of regular theater seats would directly impact The Fox's ability to compete with other venues, possibly resulting in lost revenue. Therefore, The Fox satisfied its burden of persuasion, proving that barrier removal was not "readily achievable."

## V. CONCLUSION

Because we conclude that the district court properly applied the burden-shifting standard enunciated in *Colorado Cross* to the particular facts of this case, we affirm the district court's order granting summary judgment to The Fox.

AFFIRMED.

12