**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAREK MOLSKI, an individual,
       *Plaintiff,*

   and

DISABILITY RIGHTS ENFORCEMENT,
EDUCATION, SERVICES: HELPING YOU
HELP OTHERS, a California public
benefit corporation,
      *Plaintiff-Appellant,*

   v.

FOLEY ESTATES VINEYARD AND
WINERY, LLC, a California limited
liability company,
      *Defendant-Appellee.*

No. 06-56385

D.C. No.
CV-03-09393-CBM

JAREK MOLSKI, an individual,
       *Plaintiff,*

   and

DISABILITY RIGHTS ENFORCEMENT,
EDUCATION, SERVICES: HELPING YOU
HELP OTHERS, a California public
benefit corporation,
      *Plaintiff-Appellee,*

   v.

FOLEY ESTATES VINEYARD AND
WINERY, LLC, a California limited
liability company,
      *Defendant-Appellant.*

No. 06-56418

D.C. No.
CV-03-09393-CBM

OPINION

8325

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted
April 9, 2008—Pasadena, Caliornia

Filed July 9, 2008

Before: Harry Pregerson, Dorothy W. Nelson, and
Ferdinand F. Fernandez, Circuit Judges.

Opinion by Judge D.W. Nelson;
Partial Concurrence and Partial Dissent by Judge Fernandez

**COUNSEL**

Julia M. Adams and Thomas E. Frankovich, Law Offices of Thomas E. Frankovich, San Francisco, California, for the plaintiff-appellant.

Barry Clifford Snyder, Snyder Law, Santa Barbara, California, for the defendant-appellee.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

This case involves a paraplegic who encountered discriminatory barriers to access when he visited a winery with his grandmother. Unwilling to remove barriers to the historic wine-tasting room, Foley Estates Vineyard and Winery ("Foley") began providing services on a gazebo with a "big bell" where individuals barred from the wine-tasting room could ring for service. Jarek Molski and Disability Rights Enforcement, Education, Services ("DREES") sued Foley for injunctive relief and damages to redress physical barriers to wheelchair accessibility. The district court ordered barrier removal within the building, but determined that it would not be readily achievable to make an accessible ramp to the

entrance. We affirm the injunction requiring barrier removal within the building and we remand for the district court to apply 28 C.F.R. § 36.405 and the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities, 28 C.F.R. § 36 App. A 4.1.7 ("ADAAG § 4.1.7" or "§ 4.1.7") when evaluating whether an accessible ramp would be readily achievable.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2003, Jarek Molski[1] visited the Foley Estates Winery with his grandmother. While attending a wine-tasting, Molski encountered multiple physical barriers to entry with his wheelchair. An accessibility expert, Rick Sarantschin, conducted a sub rosa investigation of the property on October 12, 2003. Sarantschin confirmed the existence of barriers to entry including a ramp with a slope that varies between 6% and 20%; a raised threshold measuring 4.5″; a round door knob; a rear door width of only 30″; another door width of 31.25″; and a wine-tasting counter height of 42″. Jarek Molski and DREES filed suit against Foley on December 22, 2003.

Prior to the commencement of litigation, Foley undertook $23,994 in renovations to provide all services on a wheelchair-accessible gazebo. Renovations included an accessible ramp from the parking lot and a "big bell" to summon for service. Nearly two years into the court proceedings, the Santa Barbara County Historic Landmarks Advisory Commission declared Foley Estates a "Place of Historical Merit" by way of resolution No. 2005-01.

At trial, the court heard expert testimony regarding proposed methods of barrier removal and associated costs. The

---

[1]Jarek Molski is paraplegic and requires a wheelchair for mobility. Molski is a member of DREES, a nonprofit membership organization that advocates on behalf of individuals with disabilities.

court also heard testimony from Foley's architectural historian, who opined that an access ramp would have a severe impact on the historical nature of the cottage. The judge determined that it would cost $34,074 to construct an access ramp to the rear of the building, and it would cost $5,130 to remove all physical access barriers inside the building. The judge found that removal of interior barriers would be readily achievable, but removal of exterior barriers would not be readily achievable because it would threaten the architectural significance of the property. In reaching this finding, the judge held that 28 C.F.R. § 36.405 and ADAAG § 4.1.7 do not apply to barrier removal for existing facilities. Thus, the judge allocated the burden of production to the plaintiff to show that the proposed alteration would not threaten the historic significance of the building. The trial judge issued a permanent injunction requiring barrier removal inside the cottage.

DREES timely appeals the district court's findings regarding the applicability of 28 C.F.R. § 36.405 and ADAAG § 4.1.7, and the ready achievability of constructing an accessible ramp. Foley cross-appeals and challenges the permanent injunction requiring removal of interior physical barriers.

## JURISDICTION AND STANDARD OF REVIEW

DREES filed the underlying action for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12300, in federal court pursuant to 28 U.S.C. § 1331. We exercise jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

"The interpretation of [the ADA] is a question of law subject to de novo review." *Barden v. City of Sacramento*, 292 F.3d 1073, 1075 (9th Cir. 2002). We also review the district court's allocation of the burden of proof de novo. *Ferrari, Alvarez, Olsen & Ottoboni v. Home Ins. Co.*, 940 F.2d 550, 555 (9th Cir. 1991). We review the court's decision whether

to grant equitable relief under the ADA for an abuse of discretion. *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1020 (9th Cir. 2002).

## DISCUSSION

## I.  EXTERIOR RAMP

### A.  APPLICABLE REGULATIONS

[1] On appeal, we are asked to decide whether 28 C.F.R. § 36.405 and ADAAG § 4.1.7 apply to barrier removal in existing facilities. By their terms, these regulations apply to "alterations;" however, 28 C.F.R. § 36.304(d)(1) extends their application to readily achievable barrier removal in existing facilities. Despite this regulatory directive, the district court declined to apply § 36.405 and § 4.1.7. We reverse and remand.

[2] Our analysis begins with 28 C.F.R. § 36.304, which regulates barrier removal in existing facilities of public accommodation. That section requires "[a] public accommodation [to] remove architectural barriers in existing facilities . . . where such removal is readily achievable."[2] 28 C.F.R. § 36.304(a). The regulation goes on to specify that, "measures taken to comply with the barrier removal requirements of this section shall comply with the applicable requirements for *alterations* in § 36.402 and §§ 36.404-36.406. . . ." 28 C.F.R. § 36.304(d)(1) (emphasis added). If compliance under those additional regulations would not be readily achievable, "a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements." 28 C.F.R. § 36.304(d)(2).

---

[2]The ADA defines readily achievable as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Factors to consider include the costs of the project, the resources of the facility and entity, and the nature of the entity and its operations. *Id.*

**[3]** In this case, we look to the regulations governing historic buildings because the Santa Barbara County Historic Landmarks Advisory Commission designated the building as a place of local historic merit. Through its plain language, 28 C.F.R. § 36.304(d)(1) directs vendors to comply with 28 C.F.R. § 36.405[3] when making readily achievable accommodations. Section 36.405 requires qualified historic buildings to "comply to the maximum extent feasible with [ADAAG § 4.1.7]." 28 C.F.R. § 36.405(a). Under § 4.1.7, "if the entity undertaking the alterations believes that compliance with the requirements . . . would threaten or destroy the historic significance of the building . . . the entity should consult with the State Historic Preservation Officer." ADAAG § 4.1.7(2)(b). "If the State Historic Preservation Officer agrees that compliance with the accessibility requirements for accessible routes (exterior and interior), ramps, entrances or toilets would threaten or destroy the historical significance of the building or facility, the alternative requirements in 4.1.7(3) may be used." *Id.* Under our reading, 28 C.F.R. § 36.304(d)(1) requires compliance with § 36.405, which incorporates § 4.1.7(2)(b) and provides a procedure for businesses to seek alternative requirements for historic properties.

**[4]** Our reading of 28 C.F.R. § 36.304 preserves the leniency allocated to existing facilities under Title III of the Americans with Disabilities Act. The ADA only requires barrier removal in existing facilities "where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Section 36.304 integrates the "readily achievable" standard into both § 36.304(a) and § 36.304(d)(2). Section 36.304(a) ensures that only readily achievable barrier removal triggers the incorporation of § 36.405 and § 4.1.7, and § 36.304(d)(2) allows for partial compliance if full compliance with those regulations would not be readily achievable. Thus 28 C.F.R. § 36.304

---

[3] Section 36.405 applies to "facilities that are eligible for listing in the National Register of Historic Places . . . or are designated as historic under State or local law."

incorporates § 36.405 and § 4.1.7 into the ready achievability framework, and retains the flexible standard reserved for existing facilities.

Additionally, § 4.1.7 establishes a procedure for determining whether barrier removal in existing facilities will be readily achievable. According to the ADA Title III Technical Assistance Manual ("ADA Manual") § III-4.4200, "[b]arrier removal would not be considered 'readily achievable' if it would threaten or destroy the historic significance of a building or facility that is . . . designated as historic under State or local law." The standard set in § 4.1.7 is identical to the standard of ready achievability proffered by the ADA Manual. This similarity between the language suggests that application of § 4.1.7 is consistent with the standard for existing historic facilities. Therefore, the procedure set forth in § 4.1.7 may be used to determine what is readily achievable in existing historic facilities.

[5] For the foregoing reasons, we find that the district court erred when it refused to apply § 36.405 and § 4.1.7 to readily achievable barrier removal in existing facilities. We acknowledge that three courts have considered historical significance as a factor for determining ready achievability without invoking 28 C.F.R. § 36.405 or ADAAG § 4.1.7.[4] However, we find the explicit regulatory language to be more persuasive than the absence of discussion of these regulations in our sister circuits. Therefore, we remand to the district court to apply § 36.405 and § 4.1.7 when determining whether an exterior ramp would be readily achievable.

---

[4]In, *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1275 (11th Cir. 2006), *Colorado Cross Disability Coalition v. Hermanson Family Ltd.*, 264 F.3d 999, 1007 (10th Cir. 2001), and *Speciner v. NationsBank, N.A.,* 215 F. Supp. 2d 622, 631 (D. Md. 2002), courts have considered historical significance as a factor for determining ready achievability without invoking 28 C.F.R. § 36.405 or ADAAG § 4.1.7. Notably, none of these cases rejects the application of 28 C.F.R. § 36.405 and ADAAG § 4.1.7; they simply proceed without analyzing those authorities.

## B.    BURDEN OF PRODUCTION

At trial, the judge relied on *Colorado Cross Disability Coalition v. Hermanson Family Ltd.* to find that DREES bore the initial burden of production for the question of ready achievability. *See* 264 F.3d 999, 1002 (10th Cir. 2001). As noted above, *Colorado Cross* failed to address § 36.405 and § 4.1.7. This omission tainted the inquiry into who bears the burden of production for the ready achievability of barrier removal in historic facilities. We reverse and remand because we find that § 4.1.7 counsels in favor of placing the burden of production on the defendant.

[6] We begin by looking to § 36.405 and § 4.1.7 to allocate the burden of production. Under § 4.1.7(2)(b), "if the entity undertaking alterations believes that compliance with the requirements . . . would threaten or destroy the historic significance of the building . . . the entity should consult with the State Historic Preservation Officer." Although this clause uses permissive language, it calls upon the party who believes that compliance would threaten the historical significance of the building to consult the appropriate agency. It does not place that burden on the party advocating for remedial measures. Thus, the language of § 4.1.7(2)(b) counsels in favor of placing the burden of production upon the defendant.

[7] By placing the burden of production on the defendant, we place the burden on the party with the best access to information regarding the historical significance of the building. The defendant sought the historical designation in this case. Thus, the defendant possesses the best understanding of the circumstances under which that designation might be threatened. The defendant is also in the best position to discuss the matter with the Santa Barbara County Historic Landmarks Advisory Commission and to request an opinion on proposed methods of barrier removal. As a result, the defendant is in a better position to introduce, as part of its affirmative defense, detailed evidence and expert testimony concerning whether

the historic significance of a structure would be threatened or destroyed by the proposed barrier removal plan.

**[8]** As the dissent reasoned in *Colorado Cross*, "[i]f plaintiffs must all but present the court with a pre-approved construction contract for a sum certain which includes detailed plans, impact statements, engineering studies, and permits to meet their threshold burden, virtually no plaintiff could afford to bring an architectural barrier removal claim under 42 U.S.C. § 12182(b)(2)(A)(iv)." *Colorado Cross*, 264 F.3d at 1011 (Lucero, J., dissenting). We need not require an ADA plaintiff to undertake such heroic measures. Congress relies on private actors, i.e., disabled individuals, to enforce the ADA by filing lawsuits. Thus plaintiffs should not be deterred from filing meritorious claims by an inappropriate allocation of the burden of production.

**[9]** We find that the language of § 4.1.7, the access to information, and the congressional intent behind the ADA support placing the burden of production on the defendant. Thus, we reverse and remand for the district court to assign the burden of production to the defendant on the issue of whether barrier removal would threaten the historical significance of the building.

## II.   DUTY TO REMOVE INTERIOR BARRIERS

**[10]** When the district court ordered removal of interior barriers to the building, the court arguably enhanced the probability that persons with disabilities would attempt to traverse the non-compliant ramp to access the building. Foley argues that we should absolve the winery of its responsibility to remove interior barriers because the only existing ramp is non-compliant. We reject this argument and affirm the district court's injunction requiring barrier removal inside the building.

**[11]** Both parties find support for their positions in 28 C.F.R. § 36.304(d)(2). According to this regulation:

> If . . . the measures required to remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements. Such measures include, for example, providing a ramp with a steeper slope . . . . No measure shall be taken, however, that poses a significant risk to the health or safety of individuals with disabilities or others.

28 C.F.R. § 36.304(d)(2). DREES relies on the provision for partial accommodation wherever complete accommodation is not readily achievable. Foley relies on the caution against partial accommodations where they pose a significant risk to health and safety. We find that partial accommodation was appropriate in this case.

[12] First, § 36.304(d)(2) expressly contemplates that a venue may provide a ramp with a steeper slope. The provision of such a ramp does not excuse the facility from otherwise making readily achievable accommodations to the maximum extent feasible. Therefore, the fact that there is an *existing* ramp with a steeper slope also does not excuse the facility from making readily achievable accommodations to the maximum extent feasible. Second, the inaccessibility of entry to one group of individuals does not justify retaining barriers to access inside the building for all others who may safely gain entry. Where readily achievable, the interior of the building must be made accessible for all who may enter.

[13] Foley argues that removing barriers to the interior of the building might tempt people with disabilities to traverse a ramp that is nearly twelve percent steeper at points than ADA Guidelines recommend. According to Foley, this temptation implicates 28 C.F.R. § 36.304(d)(2) because it "poses a significant risk to the health or safety of individuals with disabilities." When weighing this consideration, we recognize the diversity in the population of persons with disabilities who

might seek to use this ramp. People using canes, walkers, braces, and powered chairs can often navigate a steeper ramp than people using manual chairs, so safety risks vary with the nature of the disability and adaptive equipment. Notably, the only evidence that Foley cites to support its theory of a health and safety risk is the pleading of a manual wheelchair user who complained of trauma to his upper extremities. Although the ramp allegedly caused injury to Jarek Molski, the ramp might not cause injury to people using different adaptive equipment. Because safe access is possible for many persons who might need or use the ramp, the district court did not abuse its discretion by ordering readily achievable accommodations to the interior of the wine-tasting room.

## III.   ALTERNATIVE GAZEBO

Foley argues that the provision of all relevant services on the wheelchair-accessible gazebo was legally adequate as a means of barrier removal. We reject this argument and affirm the district court's imposition of readily achievable barrier removal inside the building.

As a threshold matter, a facility may only substitute alternatives to barrier removal where "as a result of compliance with the alterations requirements specified in paragraph (d)(1) of this section, the measures required to remove a barrier would not be readily achievable." 28 C.F.R. § 36.304(d)(2). As noted above, the district court did not abuse its discretion in determining that barrier removal inside the building was readily achievable. In light of this holding, no alternative accommodations can supplant the legally required barrier removal.

**[14]** Although we find the gazebo inadequate for those who could otherwise access the wine-tasting room, the gazebo provides an important avenue of participation for those who cannot traverse the steps or ramp to the wine-tasting room. We acknowledge Foley's efforts to serve this community; however, these efforts do not change Foley's obligation to make

readily available changes to enable the maximum participation possible for those who are able to access the interior of the wine-tasting room. The gazebo places those who could otherwise access the wine-tasting room at a disadvantage that the ADA seeks to remove. Thus, the Gazebo is not an appropriate alternative accommodation.

## CONCLUSION

We REVERSE and REMAND for the district court to apply § 36.405 and § 4.1.7 and place the burden of production on the defendant. Additionally, we AFFIRM the district court's permanent injunction requiring removal of interior barriers to wheelchair access.

**REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.**

---

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in the majority's determination that the district court did not err when it required Foley Estates Vineyard and Winery, LLC, to make changes to the interior of its building pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181-12189 ("ADA"). However, I dissent from the majority's reversal of the district court's order denying a demand that Foley make the proposed exterior changes.

It is important to note that this is not a case where Foley sought to construct a new facility. *See* 42 U.S.C. § 12183(a)(1). Nor is it a case where Foley sought to alter an old facility. *See id.* § 12183(a)(2). It is, instead, a case where Foley was not seeking to make any change, but Disability Rights Enforcement Education Services: Helping You Help Others (hereafter "Disability Rights") demanded that changes be made because the failure to do so would be discriminatory.

*See id.* § 12182(b)(2)(A)(iv). However, a mere failure to remove an architectural barrier is discriminatory only "where such removal is readily achievable." *Id.* In other words, the mere existence of the barrier does not bespeak wrongdoing; it only becomes wrongful if removal can be readily achieved.

Barrier removal is readily achievable when it is "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9). That definition is extremely important. It imposes a much less stringent standard upon owners of existing properties than that imposed upon owners who undertake new construction and are required to show structural impracticability in order to avoid violating the ADA. *See id.* § 12183(a)(1). It is also less stringent than the "maximum extent feasible" standard imposed upon owners who seek to alter their facilities. *See id.* § 12183(a)(2).

In determining ready achievability, "the nature and cost of the action needed" must be taken into account. *Id.* § 12181(9)(A). Furthermore, because it was never intended that the nation's architectural heritage be destroyed under the banner of readily achievable accessibility, special consideration is given to buildings that "are designated as historic under State or local law." 28 C.F.R. § 36.405(a). As to those, it is important to avoid changes that would "threaten or destroy the historic significance of the building . . . ." *Id.* § 36.405(b). As the Department of Justice puts it: "Barrier removal would not be considered 'readily achievable' if it would threaten or destroy the historic significance of a building or facility that is . . . designated as historic under State or local law." Dep't of Justice, ADA Title III Technical Assistance Manual: Covering Pub. Accommodations & Commercial Facilities, § III-4.4200; *see also* 16 U.S.C. § 470f; Nondiscrimination on the Basis of Disability by Pub. Accommodations & in Commercial Facilities, 56 Fed. Reg. 35,544, 35,568-69 (July 26, 1991). It is through that lens that we must review the district court's decision in this case because the Foley building in question is a Craftsman house which has

been designated as a Place of Historic Merit by the Santa Barbara County Historic Landmark Commission. Nobody doubts that.

When that proper method of examining the district court's determination is used, it is apparent that the district court did not clearly err[1] when, based on the record before it, the court determined that the changes suggested by Disability Rights would, in fact, severely impact or destroy the historic significance of Foley's building. In reaching that conclusion, the court relied upon the unrebutted evidence from an expert architectural historian, Dr. Pamela Post, who testified to that effect and added that if the suggested changes had been made previously, they would have made the designation of the house as a Place of Historic Merit problematic. She, by the way, is the person who presented the initial report that supported the designation of the property in the first place.

But, argues Disability Rights, the district court was not permitted to make that finding. Why? Well, Disability Rights points to the fact that the regulation on removal of barriers states that when measures *are* taken to comply with readily achievable barrier removal requirements, any alterations made are to comply with 28 C.F.R. § 36.405(a) "for the element being altered." 28 C.F.R. § 36.304(d)(1). Of course, that is no surprise because if a change is made, it becomes an alteration and ought to then make the property accessible. But, to state that the intent of the regulation is to make barrier removal essentially the same as voluntary alteration is to conflate those two different concepts by making the very threshold for removability the same as the standard for alteration. That cannot have been the intent of the regulation.

Leaving that objection aside, however, Disability Rights' second step is even more problematic. Having been referred

---

[1]*See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 837 (9th Cir. 2007).

to 28 C.F.R. § 36.405, we should, says Disability Rights, then note that § 36.405 further refers to 28 C.F.R. Pt. 36, app. A (hereafter "Appendix A"). And, notes Disability Rights, § 4.17(2)(b) of Appendix A states that when making alterations to historic buildings the entity (here Foley) "should consult with the State Historic Preservation Officer." What Disability Rights bypasses is the clear definition of "should" as used in Appendix A. As opposed to "may"[2] and "shall,"[3] the word "should" by definition "[d]enotes an advisory specification or recommendation." *See* Appendix A § 3.4. I fail to see how or why the existence of that recommendation of a possible course of action would preclude a district court from taking direct expert testimony and making a finding on the effect of a proposed change on the historic significance of the property in question. Thus, the claim that the district court could not make a finding on the issue must fail.

Disability Rights also raises questions about whether it had any burden to propound a prima facie case that included an element regarding the effect of its proposed changes on the historic significance of the property. Other courts have indicated that plaintiffs, like Disability Rights, do have that obligation. *See, e.g.*, *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273-75 (11th Cir. 2006); *Colo. Cross Disability Coal. v. Hermanson Family Ltd.*, 264 F.3d 999, 1004-07 (10th Cir. 2001); *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 632 (D. Md. 2002). However, I see no need to resolve that issue in this case. The district court decided the question of ready achievability after a trial. Thus, any shifting burdens of production are of no import. *Cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-11, 113 S. Ct. 2742, 2748-49, 125 L. Ed. 2d 407 (1993) (holding that a burden shifting presumption "simply drops out of the picture" once the party comes forward with evidence). Here the district court received all evidence that the parties chose to put forward,

---

[2]Appendix A § 3.4.

[3]*Id.*

and made a finding that there would be a deleterious impact upon the historic significance of the property. No more was needed, and the fact that Disability Rights did not put forth any historic significance evidence of its own, expert or otherwise, is fatal to its position. *See, e.g.*, *Gathright-Dietrich*, 452 F.3d at 1275; *Colorado Cross*, 264 F.3d at 1009.

In short, as I see it, the district court's perspicacity and care led it to the correct result in this case. Its decision should be affirmed.

Thus, I concur in part and respectfully dissent in part.